WALKER (FOURTH NAT. BANK v.).
See Case No. 4,992.

---

## Case No. 17,070.

### WALKER v. GRAND TRUNK RY. CO.

[2 Hask. 96.] [1]

Circuit Court, D. Maine. Sept., 1876.[2]

MASTER AND SERVANT—NEGLIGENCE OF RAILROAD COMPANY—FELLOW SERVANTS—NEW TRIAL.

1. A railway company managing its trains by telegraph, failing to provide a suitable telegraph line, so equipped with telegraph stations and operatives as to properly and safely control the movement of its trains, is guilty of negligence, and responsible to one of its train servants for injuries sustained thereby.

2. After verdict for plaintiff, the court will not grant a new trial for defects in a declaration that might have been amended, when substantial justice has been done.

3. A railway company, guilty of negligence that caused an injury to a servant, cannot defeat his action for damages by showing that a fellow servant was also guilty of negligence in the premises.

Case [by Nathaniel Walker] to recover damages for personal injuries sustained while employed upon one of defendant's trains, by a collision caused by the defendant's negligence. The case was tried upon the general issue, and the plaintiff had a verdict in his favor, whereupon the defendant moved for a new trial because the verdict was against law and evidence.

George F. Holmes and Almon A. Strout, for plaintiff.

John Rand, for defendant.

Before CLIFFORD, Circuit Justice, and FOX, District Judge.

FOX, District Judge. In March, 1873, the defendant was the lessee of the railroad from Island Pond to Portland, and the plaintiff was in their employment on the train for the distribution of ties for the repairs of the road. This train was known as the "tie train," had its conductor and engineer, but its movements

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]
[2] [Affirmed in 154 U. S. 653, 14 Sup. Ct. 1189.]

were directed and controlled by Chevalier, the train dispatcher at Island Pond, by means of the telegraph. On the 25th of March, this train with the plaintiff left Gorham for South Paris with orders to work between these places distributing ties, keeping clear of all regular trains, and arrived seasonably at Gilead before 9.50. The same day at 4.30 a. m., freight train No. 6 left Portland for Island Pond. Its movements should have conformed to the time tables of the company, but it fell behind and was thirty minutes late at Bryant's Pond. These two trains came into collision near West Bethel, about five and one-half miles from Gilead, and the plaintiff sustained serious personal injuries for which he has brought the present action. A verdict has been rendered for the plaintiff, which the defendant moves to set aside as against law and evidence.

To a correct understanding of the cause, some explanations of the distance between the various stations on the road from Gilead to Bryant's Pond, and the arrival and departure of the trains is important. Gilead is seventeen miles west from Bryant's Pond, with three stations intervening; viz., West Bethel, about six miles from Gilead, then Bethel, three and seven-eighths miles from West Bethel, next Locke's Mills, about three miles east from Bethel and four and one-half miles west of Bryant's Pond. There was telegraph communication with but one of the stations between Gilead and Bryant's Pond, Bethel. Chevalier, called by defendant, testified that he was the chief train dispatcher at Island Pond, and as such had charge of the trains, made the crossing of regular trains when late, regulated the movements of the trains by telegraph, and was provided at Island Pond with all the means requisite to transact the business; that, by the seventeenth rule of the road. "the stoppage of trains having the right of track must invariably be secured before the crossing train is dispatched, or the track considered to be clear;" that on the morning of March 25th the telegraph operator at Gilead, at 9.50, reported to him the tie train then at Gilead and waited orders; Chevalier replied to him. "Wait a minute;" then telegraphed to Bryant's Pond, who replied, "Aye, aye;" "I commenced to give an order for Bryant's Pond for No. 6 train and Bryant's Pond operator stopped me and reported No. 6 had started at 9.50; then I telegraphed to Bethel and continued doing so for twenty-five minutes; got no answer till 10.22; then I inquired where No. 6 was; Bethel replied, gone, reported No. 6 off at 10.15; had previously sent an order to tie train at Gilead at 10.15 to cross No. 6 at West Bethel, but told the operator at Gilead to hold orders a minute; told him to let the tie train go; he reported it away at 10.20. No. 6 left Bethel at 10.15, having right of way over tie train; I gave no notice to No. 6 that tie train was to cross them at West Bethel; collision was caused by my negligence in not securing No. 6 before I gave the order to the tie train; I violated above rule; with the business of the Grand Trunk a tele-

graph is necessary at West Bethel; the. telegraph operator was the ticket agent and did all the work at Bethel; I understood he was absent twenty-five minutes in freight shed, out of his office at the time." The writ contains two counts; the second charges that by reason of the fault, negligence and carelessness of defendant in not providing careful and suitable superintendents, * * telegraph operators and other servants, * * and by reason of the fault, negligence, carelessness and mismanagement of said corporation and its superintendent, * * train dispatchers, telegraph operators and other servants, * * in wrongfully and carelessly neglecting telegraph to warn and instruct the servants of said company, having possession, charge and control of another train belonging to said defendant, &c., and by other negligent acts and omissions of said defendant the collision was occasioned, &c.

At the trial, the court instructed the jury, among sundry instructions not excepted to, that "the defendant, if it undertook to manage and conduct the business of running its trains by telegraph. was bound to have a proper and fit telegraph line for this purpose, with a reasonable number of telegraph stations and operators to properly conduct and control movements of the trains; and it is for the jury to decide whether this duty was performed by the defendant, or whether it was guilty of negligence and want of ordinary care in this respect, by not having the requisite number of telegraph stations and operators for conducting the business of the road. If it was guilty of such negligence and want of ordinary care, and that occasioned the injury which otherwise would not have occurred, the jury would be authorized to find a verdict for plaintiff." Although excepted to at the trial, the correctness of this ruling was conceded at the hearing on the motion for a new trial by the learned counsel for the corporation, and it is sustained by all the authorities. and was merely the application of the rule of law, that when injuries to servants or workmen happen by reason of improper and defective machinery and appliances used in the prosecution of the business. the master is accountable. Snow v. Housatonic Railroad Co., 8 Allen, 441. It is now argued that such is not the ground of action as set forth in the writ, and therefore this instruction was improperly given. and for that cause a new trial should be had; that the claim as made in the writ was for negligence of the servants of the company, and not for injuries occasioned by its own negligence. The second count, of which an abstract is before recited, does most clearly charge that the injury was occasioned by the negligence of the corporation as well as by that of its telegraph operator and other servants; and while the specific negligence of the defendant is not as sharply defined in the writ as could have been desired, yet in that. it is set forth as a ground of complaint. and after verdict is sufficient. It does not any where appear that this objection was taken at the trial; and if it had been, and an amendment request-

ed, it should have been allowed under all the circumstances disclosed by the evidence. For a technical objection of this character, a new trial should not be granted when justice has been done, and the objection could have been removed by an amendment before the new trial was had. The instructions given being unobjectionable, a new trial can only be granted because the evidence was not sufficient upon this point to authorize the verdict. A careful review of the testimony satisfies the court that the finding of the jury in this respect was well warranted by the evidence.

The question for the jury to pass upon was, whether this company, conducting its running of trains to a great extent by telegraph, had provided the requisite number of telegraph stations and operators for its business. From Gilead to Bryant's Pond is seventeen miles, with three stations intervening, at only one of which, Bethel, there were any facilities for giving the movement of trains by telegraph; and at that place, the jury was warranted in finding that the various duties which the operator there had to perform, of ticket seller, freight agent, &c., as well as telegraph operator, were such that he could not properly discharge them all, and thus that the company were requiring of him more than he could attend to, so that it had failed to provide a suitable operator at that point, leaving the whole distance of seventeen miles unprotected in this behalf. Admitting that the company was negligent in this respect, it is claimed that the negligence of Chevalier, in not detaining the tie train at Gilead according to rule 17, but giving it the right of way, was one cause; that train No. 6 was also a cause of the injury; that there was double negligence, that of the defendant as well as of its servant, who was a fellow servant of plaintiff; and that the plaintiff cannot recover for the injury occasioned by the negligence of a fellow servant. The correctness of this latter proposition, or its applicability to this case, we do not propose to consider, as in our view, contributory negligence to defeat a right of action must be that of the party injured, which it is not claimed existed in the present case. Paulmier v. Erie R. Co., 34 N. J. Law 151. Motion overruled. Judgment on the verdict.

[A writ of error was sued out from the supreme court, where the judgment of this court was affirmed. 154 U. S. 653, 14 Sup. Ct. 1189.]